UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

JH SHIPPING CO. LTD.,

                    Plaintiff,

    - against -

AL TUWAIRQI,

                    Defendant.
--------------------------------------------------------------X



RECEIVED
JUN 0 4 2008
U.S.D.C. S.D. N.Y.
CASHIERS
ECF CASE

## VERIFIED COMPLAINT

Plaintiff, JH SHIPPING CO. LTD., (hereinafter referred to as "Plaintiff"), by and through

its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, AL TUWAIRQI, (hereinafter referred to as "Defendant") alleges, upon information

and belief, as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

    2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under foreign law with a principal place of

business in Seoul, South Korea.

    3.     Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity organized and existing under foreign law with a principal place of business

in Damman, Saudi Arabia.

4.    By a charter party entered into on January 19, 2007 on the NYPE 1946 charter party form, Plaintiff, as disponent owner, chartered to Defendant the M/V ZHE HAI 128 for a one time charter trip with a duration of about 25 to 30 days. Pursuant to clause 4 the charter party the hire rate was $19,000.00 per day. *See charter party attached as Exhibit 1.*

5.    Pursuant to the charter party, Plaintiff duly delivered the Vessel into the Defendant's service on 2 February 2007 at Sheerness, and there loaded 21,105 mt mild steel billets and safely carried same to Jeddah, where the Vessel was re-delivered at 1400 GMT on 24 February 2007.

6.    Under Plaintiff's Final Hire Statement dated 2 March 2007, a sum of $84,275.71 is due and owing by Defendant to Plaintiff. *See Final Hire Statement attached as Exhibit 2.*

7.    Wrongfully, and in breach of its obligations under the charter party, Defendant has failed to pay the outstanding hire despite repeated demands.

8.    Pursuant to the charter party, all disputes must to be submitted to arbitration in London with English Law to apply. Plaintiff has commenced arbitrator and has served its claim submissions. Defendant has likewise served its submissions.

9.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| A. | Principal claim for unpaid hire: | $84,275.71; |
| B. | Interest on principal claim at 8% compounded quarterly for three years: | $22,606.27; |
| C. | Attorneys' fees and costs of arbitration: | $30,000.00; |
| **Total:** | | **$136,881.98.** |

10.    The Defendant cannot be found within this District within the meaning of

2

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

11.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That the Court retain jurisdiction to compel the Defendant to arbitrate, if necessary, in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant,

in the amount of $136,881.98 calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court.

E.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

G.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: June 4, 2008
New York, NY

                              The Plaintiff,
                              JH SHIPPING CO. LTD,

                              By: _____

                              Charles E. Murphy (CM 2125)
                              LENNON, MURPHY & LENNON, LLC
                              The GrayBar Building
                              420 Lexington Ave., Suite 300
                              New York, NY 10170
                              (212) 490-6050 – phone
                              (212) 490-6070 – fax
                              cem@lenmur.com

4

## ATTORNEY'S VERIFICATION

State of New York      )
                       )      ss.:    New York City
County of New York  )

    1.    My name is Charles E. Murphy.

    2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

    3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

    4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

    5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

    6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

    7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    June 4, 2008
        New York, NY

                                   Charles E. Murphy

5

# EXHIBIT 1

hsiee

보낸 사람:     <mail@ldens.com>
받는 사람:     <evarst00@kornet.net>
보낸 날짜:     2007년 1월 20일 토요일 오전 1:58
제목:          ZHE HAI 128 / AL-TUWAIRQI

L. Dens (Shipbrokers) Ltd. UK

Phone:      +44 (0) 1708 640 333
Fax:        +44 (0) 1708 640 848
Email: mail@ldens.com

Doc-No. 1770612  19/JAN/2007  16:58 (UTC) BPM

ATTN H S LEE / BEN

ZHE HAI 128 / AL-TUWAIRQI

HEREWITH CONFIRM CHARTERERS LIFTED SUBJECTS IN TIME. THEREFORE
PLEASE FIND BELOW FULL RECAP OF FIXTURE.


HEREWITH RECAPITULATE FIXTURE WITH CP DATE 19TH JAN 2007 ASF :

FOR:

- Account AL TUWAIRQI
- Delivery DLOSP Immingham ATDNSHINC
- Lay/can: 29 JAN - 03 FEBRUARY - 0001/2359 HRS LCL TIME
- Hire $19000/-PDPRINCOT
- For one T/C trip via sp(s) sb(s) sa(s) e.a. and always W/I TWL with
  intention steel billets
- Duration: abt 25-30 days wog.
- Redelivery 1 SP Red Sea intention Jeddah, PICO
- Bunker Clause: BOD: IFO 500-550MT, MOD 50-60MT
           BOR ABT SAME AS BOD
           PRICE: USD 310 FOR IFO, USD 610 FOR MDO
- ILHOC: USD 3500,- LSUM
- C/V/E: USD 1250,- PMPR
- 3.75pct till here inc 1.25pct address
- ENGLISH LAW/LONDON ARBITRATION
- OWISE AS PER OWNS BTB HEAD C/P DATED 18TH APRIL 2006 WITH
LOGICAL         ALTERATIONS ONLY.

END RECAP


VSLS DESCRIPTION :

VSL: ZHE HAI 128

2007-01-22

DESCRIPTION:

M/V ZHE HAI 128

Name: "ZHE HAI 128"          Type: Bulk Carrier

Flag: P.R.C.          BLT: June, 1985/Japan

Class: CCS          Call sign: BLME

Length/Beam/Depth: 167.20m/26.00m/13.30m

26,511dwt on 9.541m/SSW

Hold/Hatch: 5/5

Grt/Nrt: 15786/9209

 Panama Grt: 17,135.00  Nrt: 13,065.00

 Suez Grt: 16,607.78  Nrt: 14,452.13

Cargo hold capacity #1: 4,831.72  4,587.62

                #2: 7,436.13  7,162.65

                #3: 7,442.68  7,195.06

                #4: 7,454.12  7,195.06

                #5: 6,702.40  6,509.35

                TTL: 33,867.05 / 32,649.74

Hatch Cover: Folding type, Weather tight of steel and

      operated by hydraulic cylinders

At Sea: Ballast  abt 12.5k on 16.50mt IFO(180CST) + 2.0T MDO

      Laden  abt 12.0k on 16.50mt IFO(180CST) + 2.0T MDO

In Port: Idle      1.5mt MDO + 1.0mt IFO(180CST)

      Gear working  3.3mt MDO + 1.0mt IFO(180CST)

Main Engine:    Mitsui-B&W 5L50MCE x 1 set, 5865BHP

 Generator Engine:  M200L-UT x 3 sets

Deck Crane: 25mt x 4 sets      Maker: Fukushima Ltd.

Type: Electric-hydraulic crane

| Hatch dimension: | Hold dimension at tank top: |
|---|---|
| #1: 13.86m x 13.05m | 21.50m x 4.40m(f) x 17.60m(aft) |
| #2: 19.25m x 13.05m | 26.95m x 17.60m |
| #3: 19.25m x 13.05m | 26.95m x 17.60m |
| #4: 19.25m x 13.05m | 26.95m x 17.60m |
| #5: 19.25m x 13.05m | 26.18m x 17.60m(f) x 7.20m(aft) |

'all details abt'

+

END

MANY THANKS YOUR SUPPORT RESULTING IN THIS FIXTURE.

MEANTIME CHARTERERS HAVE FOLLOWING COMMENTS ON BTB CHARTER-PARTY WHICH WE BELIEVE ARE ALL LOGICAL AMENDMENTS.

para 1 line 5 : change 'daring' to 'during'

para 5 line 1 : delete 'semi-monthly'

para 8 line 5 : change 'deliver' to 'delivery'

para 22 line 2 : delete 'three' insert 'twenty-five'

rider :

clause 32 : line 5 : change 'geld' to 'held'

clause 53 : delete 2nd paragraph since n/a

clause 55 : line 2 : delete '30/20/15'
         line 4 : delete '30/20'

clause 70 : CHANGE SUBJECT TO 'RESPONDANCE'

END

PLEASE CONFIRM ALL OK

REGARDS



ORIGINAL

# Time Charter

GOVERNMENT FORM

Approved by the New York Produce Exchange

November 6th, 1913–Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

**This Charter Party,** made and concluded in    *London,*    ...*16th.* day of ...*January, 2007/*

Between *JH SHIPPING CO. LTD., SEOUL  as Disponent*................... Owners of the good Motorship

MV. "ZHE HAI 128" ...... of ................tons gross register, and ........................., tons net register, having

engines of ........ indicated horse power and with hull, machinery and equipment in a thoroughly efficient

state, and classed at ... of about ..cubic feet bale capacity, and about........... tons of 2240 lbs ... deadweight

capacity (cargo and bunkers, including fresh water and allowing a minimum of fifty tons) on a draft of .........

foot ......... inches on............. Summer freeboard, inclusive of permanent bunkers, which are of the capacity of

about = See Clause 20 (Vessel's description)... ......................... ......................................tons of fuel, and

capacity of steaming, fully laden, under good weather conditions about ................................................knots on a

consumption of about ......tons now *trading.......* and  *AL TUWAIRQI,* as., Charterers of the City of ...

. DAMMAN....

**Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time

of delivery, for  *one Time Charter trip via safe port(s), safe berth(s), safe anchorage(s), always afloat and always within*

*Institute Warranty Limits with intention Steel billets – duration about 25 – 30 days without guarantee always subject to*

*Owners cargo trading exclusion.  Charterers have option to break Institute Warranty Limits by paying extra insurance*

within below mentioned trading limits. Charterers to have liberty to sublet the vessel for all or any part of the time

covered by this Charter, but Charterers remaining responsible for the fulfilment of this Charter Party, Vessel to be placed

at the disposal of the Charterers, at *on dropping last outward sea pilot Immingham, any time day or night, Sundays and*

*holidays included.* Vessel on her delivery to be ready to receive *any lawful/permissible* cargo with clean-swept *washed*

*down and dried* hold and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the

winches at one and the same time (and with full complement of officers, seamen, engineers and firemen for a vessel of

her tonnage), to be employed, in carrying lawful merchandise, *World wide trading within Institute Warranty Limits See*

*Clause 78* as the Charterers or their Agents shall direct, on the following conditions :

1. That the Owners shall provide and pay for all provisions, wages and consular shipping and
discharging fees of the Crew;  *also all consular fees pertaining to vessel's nationality or flag* shall pay for the
insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water
and lubrication oil and fresh water for crew and *ferry boat which used for Owners' business only, garbage removal*
and maintain her class and keep the vessel in a thoroughly efficient state in hull, machinery and equipment *with all*
*inspection certificates necessary to comply with current requirements at ports of call and canals for and during the*
*service failing which Owners are responsible for all time lost and expenses directly connected with the loading and*
*discharging incurred thereby* for and during the service.

2. That the Charterers shall provide and pay for all the fuel except as otherwise agreed, compulsory and customary Port
Charges, Pilotages, Agencies, Consular Charges (except those pertaining to the Crew *and flag of vessel,* and all
other usual expenses except those before stated, but when the vessel puts into a port for causes for which vessel *or*

1

*hot Owners are* is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew or ports visited to be for Owners account. Fumigations ordered because of cargoes carried while vessel is employed under this charter to be for Charterers account. Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards for dunnage, they making good any damage thereto.

3.  *See Clause 57*

4.  That the Charterers shall pay for the use and hire of the said Vessel at the rate of ...*US$19,000 per day pro rata including overtime in...* United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and after the same *daily* rate for any part of a *day* month: hire to continue until the hour of the day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the Owners (unless lost) at *on dropping last outward sea pilot one safe port Red Sea, intention Jeddah, port in Charterers' option, any time day or night, Sundays and holidays included* unless otherwise mutually agreed notice of vessels expected date of re-delivery and probable port.

5.  Payment of said hire to be made in New York *Korea Exchange Bank, Miadong Branch, 3509 Min 4-Dong Tobourg Ku, Seoul 132-104, Korea, Beneficiary Bank ID : Swift/BIC Address KOEXKRSE, Beneficiary Name : JH Shipping Co. Ltd., Account Number : 650-004633-387, Reference : ZHE HAI 129* in cash in United States Currency, semi-monthly *15 days* in advance, *and* for the last half month or part of same the approximate amount of hire; and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the hire, *or* bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Charterers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain *with Owners' prior approval,* by the Charterers or their Agents, subject to agency fee and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advance.

6.  That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place *or safe anchorage* that Charterers or their Agents may direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely lie aground.

7.  That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also accommodations for supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew, tackle, apparel, furniture, provisions, stores and fuel.

8.  That the Captain shall prosecute his voyages with the utmost dispatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, and trim the cargo at their expense under the supervision, *under responsibility of* the Captain, who is always responsible for proper handling as above mentioned or delivery *of the cargo* who is to sign Bills of Lading for cargo as presented, in conformity with Mate's receipts.

9.  That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers the Owners shall on receive particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

10. That the Charterers shall have permission to appoint a supercargo, who shall accompany the vessel and see that voyages are prosecuted with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for captain's table, Charterers paying at the rate of usd 10 per day to Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally Clerks, Stevedore's Foreman, etc.,

2

Charterers paying *US$1,250.00 per month or pro rata for cable/victualling/entertainment expenses during this charter period.*

11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing *or by Telex Cable and Telephone,* and the Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Charterers, their Agents or supercargo, when required, with a true *legible copy of daily deck* and *engine logs in English showing among others copy* of daily Logs, showing the course of the vessel and distances run and the consumption of fuel.

12. That the Captain shall use diligence in caring for the ventilation of the cargo.

13. DELETED.

14. That if required by Charterers, time not to commence before...*0001 hours local time – 29th January, 2007...* and should vessel not have given written notice of readiness on or before... *2359 hours local time – 3rd February, 2007* Charterers or their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness)

15. That in the event of the loss of time from deficiency of sickness, strike, accident and/or *default of men including Master Officers and crew or deficiency* of stores, fire, breakdown or damages to hull, machinery or equipment, grounding, detention *or delay by the arrest of the vessel (unless such arrest is caused by events for which the Charterers or their agents are responsible) or* by average accidents to ship or cargo, dry-docking for the purpose of examination or painting bottom, or by any other cause preventing the full working *and/or use* of the vessel to Charterers, the payment of hire shall cease for the time thereby lost, all fuel consumed and expenses incurred during off-hire to be for owners account : *but except the foresaid cases caused by Charterers* and if upon the voyage the speed be reduced by defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all extra expenses directly related shall be deducted from the hire..

16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

17. See *Clause 87*

18. That the Owners shall have a lien upon all *Charterers* cargoes, and all sub-freights for any amounts due under this Charter, including general Average contributions, and the Charterers to have a lien on the ship for all monies paid to advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel.

19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and Crew's proportion. General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1974 *or any amendments in London* Provisions as to General Average in accordance with the *New Jason Clause as attached* above are to be included in all bills of lading issued hereunder. *Hire shall not contribute to General Average.*

20. DELETED.

21. *See Dry-docking Clause (Rider Clause 72)*

22. Owners shall maintain the gear of the ship as fitted, providing gear (for all cranes derricks) capable of handling lifts up to *See Clause 29  twenty five (25)* tons, also providing ropes, falls, slings and blocks *within a normal type and reasonable quantities only* as on board. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary cranes gear for same, otherwise equipment and gear cranes for heavier lifts shall be for

3

Charterers' account. Owners also to provide on the vessel lanterns and oil for night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The Charterers to have the use of any gear on board the vessel.

23. Vessel to work night and day, if required by Charterers, *Owners also to provide on the vessel sufficient electric light for night work but any additional light over those on board to be at Charterers expenses* and all cranes winches to be at Charterers' disposal during loading and discharging, shore Winchmen to be paid by Charterers. In the event of a disabled *crane or cranes*, winch or winches, or insufficient power to operate winches *cranes*. Owners to pay for shore engine, in lieu thereof, if required, and pay any loss of time occasioned thereby.

24. It is also mutually agreed that this Charter is subject to all the terms and provisions of both of which are to be included in all bills of lading issued hereunder : *USA Clause Paramount, New Both-to-Blame Clause, New Jason Clause, P and I Bunkering Clause and Baltic Conference War Risk Clause for Times Charter 1939.*

25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be withdrawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the port or to get out after having completed loading or discharging. *Vessel not required to force ice or follow ice breaker.*

26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the navigation of the vessel, *acts of pilots and tugboats*, insurance, crew, and all other matters, same as when trading for their own account.

27. A commission of 1.25 per cent is payable by the Vessel and Owners to *J.E. Hyde & Co. Ltd., London* · on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter, & 1.25% to L.Dana (Shipbrokers)

28. An address commission of 1.25 per cent to be deducted from hire payment by Charterers.

*Clause No. 29 to 102 both inclusive as attached, are deemed to be fully incorporation in this Charter Party.*


OWNERS :                                      CHARTERERS :


This Charter Party is computer generated copy of the NYPE(Revised 3rd October, 1946) form printed under licence from the Association of Ship Broker & Agents (U.S.A), Inc, using software which is the copyright of Strategic Software Limited. It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

4



ADDITIONAL CLAUSES TO M.V. "ZHE HAI 128"
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 29.    Description Clause

| | |
|---|---|
| Vessel's Name | : MV "ZHE HAI 128" |
| Type | : Bulk Carrier |
| Flag | : People's Republic of China |
| Built | : June, 1985/Japan |
| Class | : CCS |
| Call sign | : BLME |
| Length/Beam/Depth | : 167.20 m / 26.00 m / 13.30 m |
| DWT | : 26,511 dwt on 9.541 m/SSW |
| Hold/Hatches | : 5/5 |
| GRT/NRT | : 15786 / 9209 |
| Panama GRT/NRT | : 17,135.00 / 13,066.00 |
| Suez GRT/NRT | : 15,607.78 / 14,452.13 |

| Cargo hold capacity | #1 | : 4,831.72 | 4,587.62 |
|---|---|---|---|
| | #2 | : 7,436.13 | 7,162.65 |
| | #3 | : 7,442.68 | 7,195.06 |
| | #4 | : 7,464.12 | 7,195.06 |
| | #5 | : 6,702.40 | 6,509.35 |
| | TOTAL | : 33,867.05 | 32,649.74 |

| | |
|---|---|
| Hatch Cover | : Folding type, Weather tight of steel and operated by hydraulic cylinders |
| At Sea | : Ballast about 12.5 knots on 16.50 mt IFO(180 CST) + 2.0 T MDO<br>Laden about 12.0 knots on 16.50 mt IFO(180 CST) + 2.0 T MDO |
| In Port | : |
| Idle | : 1.5 mt MDO + 1.0 mt IFO(180 CST) |
| Gear working | : 3.3 mt MDO + 1.0 mt IFO(180 CST) |
| Main Engine | : Mitsui – B & W 6L50MCE x 1 set, 5865BHP |
| Generator Engine | : M200L-UT x 3 sets |
| Deck Crane | : 25 mt x 4 sets |
| Maker | : Fukushima Ltd. |
| Type | : Electro-hydraulic crane |

1



<u>ADDITIONAL CLAUSES TO M.V. "THE HAI"</u>
<u>CHARTER PARTY DATED 19th JANUARY, 2007.</u>

Clause 29.    Continued.

Batch dimension.                    Hold dimension at tank top

#1    : 18.86 m x 13.05 m        21.50 m x 4.40 m (f) x 17.50 m (aft)

#2    : 19.25 m x 13.05 m        26.95 m x 17.60 m

#3    : 19.25 m x 13.05 m        26.95 m x 17.60 m

#4    : 19.25 m x 13.05 m        26.95 m x 17.60 m

#5    : 19.25 m x 13.05 m        26.18 m x 17.60 m (f) x 7.20 m (aft)

(All details about)

+++++

1.  OWNERS (IN THE CHARTER PARTY) / DISPONENT OWNERS FULL STYLE :
    ZHEJIANG SHIPPING GROUP WENZHOU SHIPPING CO. LTD.

2.  OWNERS P & I CLUB : CPI

3.  SHIPS VALUE AND UNDERWRITER : RMB100,000,000 / PICC

4.  CLASS AND CLASSIFICATION : CCS

5.  GRT AND SUEZ GRT : 15786/16,607.78

6.  NRT AND SUEZ NRT : 9209/14,452.13

7.  LAST SPECIAL SURVEY AND DRY-DOCK : JUL 03 / MAY 06

8.  NEXT SPECIAL SURVEY AND DRY-DOCK : 2008/2008

9.  TYPE AND DIMENSION OF HATCHES : FOLDING TYPE

        #1:  18.86 m x 13.05 m

        #2:  19.25 m x 13.05 m

        #3:  19.25 m x 13.05 m

        #4:  19.25 m x 13.05 m

        #5:  19.25 m x 13.05 m.

10. TYPE AND DIMENSION OF HOLDS :

        21.50 m x 4.40 m(f) x 17.60 m (aft)

        26.95 m x 17.60 m

        26.95 m x 17.60 m

        26.95 m x 17.60 m

        26.18 m x 17.60 m (f) x 7.20 m (aft)

11. HEIGHT FROM WATER LINE TO TOP OF HATCH COAMING

    1) LIGHT SHIP CONDITION : NO.1 HOLD    14.84 M.

                                NO.5 HOLD    11.7 M (NO BALLAST)



ADDITIONAL CLAUSES TO M.V. "ZHE HAI ___
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 29.    Continued.

2) FULL BALLAST AND FULL BUNKER CONDITION :

NO.1 HOLD   11.34 M

NO.5 HOLD   9.97 M

12.   HEIGHT FROM WATER LINE TO TOP OF HIGHEST POINT

1) LIGHT SHIP CONDITION : 38.41 M

2) FULL BALLAST CONDITION : 36.09 M

13.   TANK CAPACITY(FUEL OIL/DIESEL OIL/FRESH WATER) :

1066 M3 / 108 M3 / 254 MT

14.   CONSTANT EXCLUDING/INCLUDING FRESH WATER : 300 MT EXCLUDING

FRESH WATER

15.   CALL SIGN / TELEX / FAX / PHONE / INMARSAT ID :

BLME/NIL/FAX, PHONE: 1602623/INM C 441256215

16.   CARGO GEAR : 25 MT X 4 SETS CRANES

17.   MASTER'S NAME/NATIOALITY : CAPT. SONG/ CHINESE

18   NUMBER OF CREW/NATIONALITY : 24-25/ CHINESE

19.   ITF/WWF IN ORDER : YES

20.   DEBALLASTING CAPACITY : ABOUT 400 MT/HOUR

21.   LAST THREE SHIPMENTS (TOGETHER WITH LOAD/DISCHARGE PORT):

LOG, AFRICA TO CHINA

RICE, SE ASIA TO AFRICA

GRAIN, MED TO ARAB

22.   ISM CERTIFICATE : YES, WILL SEND

23.   Y2K CERTIFICATE : AS PER CHARTER PARTY

24.   COFR : AS PER RECAP

25.   EX NAME IF ANY : HANNI SUN

FULL ITINERARY :

AGENT :

3



ADDITIONAL CLAUSES TO M.V. "THE HAI...
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 30.     Weather Routing

The Charterers may supply an independent weather routing company's advice to the Master during voyages specified by the Charterers. The Master shall comply with the reporting procedures of the routing service selected by the Charterers, and follow routing company's suggestions concerning navigation, but Master, at his reasonable discretion, may not follow the suggested routes, in which case he has to detail in log book and report to Charterers the reason of diverting from them. Evidence of weather conditions shall be taken from the vessel's deck logs and the weather routing company's report. In the event of a consistent discrepancy between the deck logs and the weather routing company's reports, the latter and shall be taken as ruling. The routing company's assessment of the vessel performance is binding.

Clause 31.     Bimco ISM Clause

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that vessel and "The Company" (as defined by the ISM Code) shall comply with the requirement of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "The Company" to comply with the ISM Code shall be for Owners' account.

Clause 32.     On Hire/Off Hire Surveys

Joint on hire and off hire surveys shall be held by an independent surveyor, cost of same to be shared 50/50 between Owners and Charterers. Time for on hire survey Owners' account, unless vessel is working, and time for off hire survey Charterers' account. On hire survey held at delivery port or first load port and off hire survey held at last discharge port.

Clause 33.     Additional Insurance Premium

After providing by Owners, Charterers have liberty to breach Institute Warranty Limits and shall reimburse Owners for additional insurance premium against voucher on Hull and Machinery actually paid by them for breaching Institute Warranty Limits, based on the present Hull and Machinery valuation of the ship. Such additional premium is charged by

4



ADDITIONAL CLAUSES TO M.V. "ZHE HAI...
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 33.    Continued.
Owners' underwriters and not to exceed the minimum coverage under the London
Underwriters Minimum Scale on conditions no wider than their standard from of Institute
Time Clause, less usual rebate. Minimum means that Owners' underwriters shall keep the
additional premium rate to minimum. Owners confirm that Hull and Machinery Policies
contain waiver of subrogation rights against Charterers for loss of, or damage to, the vessel,
howsoever caused.

Notwithstanding any term, condition or exception of the Charter, Owners to waive all claims
against Charterers for damage arising or resulting from vessel navigating outside Institute
Warranty Limits and/or to ports which are reasonably accessible master to exercise due
diligence to avoid loss of, or damage to, ship and cargo.

Clause 34.    Return Insurance
Owners to have the full benefit of any benefit of any lay-up or return insurance premiums by
reason of vessel being in port for a minimum period as provided in her insurance policies.

Clause 35.    Extra Insurance
Any additional insurance levied on vessel and any time lost by reason of the vessel's flag,.
Ownership, class, to be borne by Owners.

Any additional insurance premium levied on cargo other than by reason of vessel's flag,
Ownership, class and any other similar cause to be borne by Charterers.

Charterers have the liberty to deduct the estimated value of redelivery bunkers from last hire
payment and if last hire payment is insufficient, then from penultimate hire payment, but only
to the extent necessary to enable final hire payment to be sufficient.

Clause 36.    Cancellation Due to Extended Off Hire
If the vessel is off hire for thirty (30) days or more during the charter period due to any
cause(s) except dry-docking (see Clause 72), the Charterers shall have the option to cancel
this Charter Party, without prejudice to any other rights, remedies, or claims which the
Charterers may have. Such option shall be exercised by the Charterers by giving written
notice of cancellation to the Owners and the vessel shall be redelivered as soon as practicable

5



ADDITIONAL CLAUSES TO M.V. "ZHE HAI ..."
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 36.    Continued.

thereafter once free of cargo properly and duly discharged under any applicable contract of
carriage.

Clause 37.    Off-hire

After suspension of hire, from any cause, the vessel shall be placed again at Charterers'
disposal at the same equivalent position where hire was suspended. Charterers accept the
vessel on hire again in such position and at such time as the vessel may again in all respects
be ready to comply with the orders and directions of the Charterers.

During any off hire periods estimated to exceed 8 days, the Owners to give the Charterers not
less than 3 (three) days definite notice of re-entering the service.

If the vessel has been off hire for a period of 40 (forty) days under this Charter Party except
dry-docking, the Charterers are at liberty to cancel this Charter Party, provided the vessel is
free of cargo, Charterers have the option to add any off hire period(s) in the Time Charter
period(s) at the rate applicable when the vessel was off-hire.

Clause 38.    Bunker Quality

Samples at the vessel's manifold of all bunkers supplied by the Charterers during the currency
of this Charter Party. Such samples to be sealed and verified as true samples by the bunker
suppliers' representative and samples to be retained in safe storage on board the vessel. The
samples are to be delivered to the Charterers at their request. In case that bunker supplier will
not follow the Charterers' instructions and refuses to witness/verify the sampling procedure
on board then the Master to immediately notify Charterers for this refusal and an independent
surveyor to be appointed for the witnessing and the verification of the sampling procedure.
Cost of this surveyor to be for Charterers' account.

Clause 39.    Stevedore Damage

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any
and all damage to the vessel caused by stevedores provided the Master has notified the
stevedores and the Charterers and/or their agents in writing as soon as practical but not later
than 24 hours after any damage is discovered, but always prior to the vessel's sailing from
port, except for hidden damages which always to be reported as soon as discovered but prior



ADDITIONAL CLAUSES TO M.V. "THE HAI
CHARTER PARTY DATED 19th JANUARY 2007.

Clause 39.    Continued.

to completion of discharge of each cargo. The Master always to use due diligence as if he were trading for Owners' own account. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage. The Master to do utmost to obtain stevedores' signature accepting liability for all stevedore damages.

(a)    In case of any and all damage(s) affecting the vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the vessel, the Owners, provided that required facilities are available locally, shall immediately arrange for repairs of such damage(s) at their expense and the vessel is to remain on hire until such repairs are completed and if required passed by the vessel's classification society and the Charterers to reimburse the Owners on receipt of properly supported repair invoice/s.

(b)    Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work.

(c)    It is expressly agreed and understood by the Owners, that the purpose of compliance of Owners' and Master's obligations in this clause is to preserve the Charterers' rights of recourse against the party allegedly responsible and if the Owners and/or the Master fail to comply with their obligations under this clause, the Charterers shall not be responsible to Owners for any such damage.

Clause 40.    Quarantine

Owners shall be liable for any delay in quarantine arising form the Master, Officers or crew having communication with the shore in any infected area without the written consent of Charterers or their Agents, also for any loss of time through detention by Customs or other authorities caused by smuggling or other infractions of local law on the part of the Master, Officers or crew. Any time lost by such causes may be deducted as off hire.

7



ADDITIONAL CLAUSES TO M.V. "THE HAL...
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 41.    Deratisation or exemption certificate
Owners to supply and vessel to be in possession of a valid deratisation or exemption
certificate throughout the duration of the Charter Party.

Clause 42.    Safety and Health Regulations
Owners warrant that the vessel shall be in possess of the necessary certificates to comply with
all safety and health regulations and all current requirements at all ports of call during the
currency of this Charter, without hindrance or delay.

Clause 43.    Tonnage Certificate
Owners will obtain an official International Tonnage Certificate prior to delivery and required
renewals throughout the Charter period, the current valid certificate being on board the vessel
at all times. In the event extra charges directly incurred by reason of lack of International
Tonnage Certificates, same shall be for Owners' account.

Clause 44.    Cargo and Equipment
Owners guarantee that throughout this Charter vessel's equipment shall comply with
regulations and/or requirements in effect at all ports of call, canals and countries in which
vessel will be employed. Owners also guarantee that vessel shall be at all times in possession
of a valid and up to date certificate on board to comply with such regulations and/or
requirements. If stevedores, longshoremen, or other labourers are not permitted to work by
reason of any failure of the Captain, Owners and/or their Agents to comply with such
regulations or by reason that vessel is not in possession of such valid and up to date
certificate(s), then Owners shall take immediate corrective measures, Charterers may suspend
hire for time lost thereby and any expenses directly related including stevedores' standby time
shall be for Owners' account.

Owners warrant to have secured and carry on board the necessary certificates to call any port
under this charter.

Clause 45.    ITF
Owners warrant that the vessel's crew is and will be during the period of this Charter Party
employed under a bona fide union agreement, the standard of which is fully acceptable to the
I.T.F. and unions in all countries not excluded in this Charter Party.



ADDITIONAL CLAUSES TO M.V. "ZHE HAI
CHARTER PARTY DATED 19thJANUARY, 2007

Clause 46.
Deleted.

Clause 47.    P & I Cover
Vessel shall be entered and will remain entered during the full currency of this Charter with a recognised first class P & I Club and shall carry full P & I cover, including cargo and pollution cover. Such cover shall always be at the sole expense of the Owner. If the Owner fails to maintain P & I cover as provided for in this Clause, in the manner described, Charterers may place equivalent insurance at Owners' expense and deduct the cost of such insurance from vessel's hire.

Owners to have the benefit of Owners P & I cover in so far as the rules permit. Owners have vessel covered with : China Ship Owners' Mutual Assurance Association.

Clause 48.    Pollution
Owners warrant that the vessel is entered with the Protection and Indemnity insurer listed in Clause 55 of the full coverage available for Marine Pollution risks.

When an escape or discharge of oil or other hazardous substances occurs from the vessel and causes or threatens to cause pollution damage, or when there is the threat of any escape or discharge of oil or other hazardous substances (i.e. a grave and imminent danger of the escape or discharge or discharge which, if it occurred, would create a serious danger of pollution damage), then Owners shall immediately undertake such measures as are reasonably necessary to prevent or minimise such damage or to remove the threat.

Owners shall keep Charterers advised of the nature and result of any measures taken by them, and, if time permits, the nature of the measures intended to be taken by them. In the event Owners fail to undertake such measures, Charterers may, at their option, upon notice to Owners or to the Master, do so themselves and any measures taken by Charterers shall be deemed taken on Owners' authority and as Owners' agent and shall be at Owners' expense except to the extent that any such pollution damage or threat was caused or contributed to by Charterers.



ADDITIONAL CLAUSES TO M.V. "ZHE HAI ?
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 49.    Cargo Claims
Cargo claims between the Owners and the Charterers shall be settled in accordance with the
Inter-Club New York Produce Exchange Agreement of February 1970, as amended 1996.

Clause 50.    Last Voyage
Deleted.

Clause 51.    Hold Cleaning
On arrival at first load port all cargo holds to be completely clean, swept, washed down by
fresh water and dried up, free of salt, rust scale and previous cargo residue and fully ready to
receive Charterers' intended cargoes in all respects and should pass shippers' or competent
authorities' inspection, otherwise vessel to be put off hire from the time of failing until the
time of passing re-inspection and any time lost/expenses incurred thereby to be for Owners'
account.

The above services shall be considered as a minimum and in shall no way be construed as an
alternative to or reduction in the services to be rendered by Officers and crew in accordance
with the Maritime Code of the country whose flag the vessel sails or in accordance with what
is customary practice in the trade.

Clause 52.    Redelivery Dirty
Charterers are to have the option of redelivering the vessel with dirty holds paying Owners
lumpsum US$3,500.00 in lieu of cleaning, removal of dunnage and securing materials.

Clause 53.
Deleted.

Clause 54.
Deleted.

Clause 55.    Delivery and Redelivery Notices
Owners to keep Charterers closely advised of expected date and place of delivery and give
approximate 10 and definite 7/5/3/2/1 days' notices thereof. Charterers to give approximate
15/10 and definite 7/5/3/2/1 days' notices of redelivery.

10



ADDITIONAL CLAUSES TO M.V. "ZHE HAI ..."
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 56.    Inspection Rights
The Charterers shall have the rights and privilege of having their representatives visit the
vessel while in port or at sea. Charterers' representatives shall have access to the entire vessel
(excluding accommodation spaces) and the Master, Officers and crew of the vessel shall co-
operate with and render any and all reasonable assistance that the Charterers' representative
may require.

Clause 57.    Bunkers
Bunkers on delivery 500/550 metric tons IFO and 50/60 metric tons MDO.
Bunkers on redelivery about the same as bunkers on delivery.
Prices both ends : US$310.00 per metric ton for IFO and US$610.00 per metric ton for MDO.

Master/vessel has liberty to burn MDO for main engine when manoeuvring in shallow/narrow
waters, transiting canal/rivers and in/out ports.

Charterers/Owners allowed to replenish additional bunkers if necessary at yard/last discharge
port before delivery/redelivery at Charterers'/Owners' account provided the same not
interfere with proper operation of the vessel.

Clause 58.    Shipboard Personnel and their Duties
A)    Upon delivery and throughout the duration of this Charter :
(i)    Vessel shall have a full and efficient compliment of Master, Officers and crew for a
vessel of her tonnage and design, who shall in any event not be less than the number required
by the laws of the flag, state and who shall be trained to operate the vessel and her equipment
competently and safety.
(ii)    All shipboard personnel shall hold valid certificates of competence in accordance
with the requirements of the law of the flag state;
(iii)    All shipboard personnel shall be trained in accordance with the relevant provisions of
the International Convention on Standards of Training, Certification and Watch Keeping for
Seafarers 1978 and/or other rules or regulations that may be promulgated from time to time.
(iv)    There shall be on board sufficient personnel with a good working knowledge of the
English language to enable cargo operations at loading and discharging places to be carried
out efficiently and safely and to enable communications between the vessel and those loading
the vessel or accepting discharge therefrom to be carried out quickly and efficiently.

11



ADDITIONAL CLAUSES TO M.V. "ZHE HAI
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 58.     Continued.

B)     Owners guarantee that throughout the Charter period the Master shall, with the
vessel's Officers and crew, unless otherwise ordered by Charterers;

(i)     Prosecute all voyages with the utmost dispatch.

(ii)     Render all customary assistance, and

(iii)    Load and discharge cargo as rapidly as possible when required by Charterers or their
Agents to do so, by night or day, but always in accordance with any applicable laws of the
flag states.


Clause 59.     Services

Hire to include but not be limited to the following services from the vessel's Officers and
crew :

1.     Docking and undocking;

2.     Shifting and warping of the ship during loading and/or discharging;

3.     Bunkering;

4.(a)   Opening and closing of hatches in preparation for, during and after loading and
discharging (including times when weather may adversely affect condition of cargo).

   b)   The Officers and crew to shape up the vessel's hatches as much as possible as far as
weather permits prior to vessel's arrival at loading and/or discharging port or places
so as to immediately commence loading/or discharging operations.

5.     The crew are to sweep and/or wash the holds and any other cargo compartments
between voyages to make the vessel ready in every respect for the next cargo acceptable to
competent authorities (See Clause 61);

6.     Supervision, direction and control of loading and discharging;

7.     All overtime of the Master, officers and crew;

8.     When certain of the above services are prohibited by shore labour regulations, the
Master shall comply with such regulations but shall use his best endeavours to perform the
services at sea whenever possible.


Clause 60.     Smuggling

It is strictly forbidden for the Master, Officers and crew to have any contraband or illegal
merchandise on board and any such contraband or illegal merchandise found on board is to be
confiscated by the Master. Any fines imposed on the vessel, the Owners, Master, Officers,
crew or on the Charterers originating from the Master and/or members of the crew by any

12



ADDITIONAL CLAUSES TO M.V. "ZHE HAI"
CHARTER PARTY DATED 19th JANUARY 2007.

Clause 60.    Continued.
regulatory body, particularly as regard to smuggling will be for Owners' account and the
Charterers are not to be responsible for any consequences resulting from such an offence. The
Owners guarantee that bonded stores will only be purchased with permission of the Master.

Clause 61.    Charterers' Equipment
The Master is to keep a record of all Charterers' gear, equipment, dunnage and/or stores
supplied to the vessel and to maintain same in good condition. Such gear, equipment,
dunnage and/or stores to be returned to Charterers prior to redelivery of vessel to Owners, or
if requested by Charterers at any time during the period of Charter, in like good condition as
supplied (fair wear and tear excepted). Charterers to redeliver the vessel with lashing
materials as on board after taking back the material from Charterers.

Clause 62.    Maintenance
A)    Throughout the Charter period Owners, whenever the passage of time, wear and tear
of any event requires steps be taken to maintain or restore the conditions stipulated in this
Charter, shall exercise due diligence so to maintain or restore the vessel.
B)    If at any time while on hire under this charter, the vessel fails to comply with its
requirements then hire shall be reduced to the extent necessary to indemnify Charterers for
such failure. If and to the extent that such failure affects the time taken by the vessel to
perform any services under this Charter, hire shall be reduced by any amount equal to the
values, calculated at the rate of hire, of the time so lost, and any extra expenses incurred by
Charterers (including fuel) shall be for Owners' account.

Any reduction of hire under this Charter Party shall be without prejudice to any other remedy
available to Charterers. If no actual loss to Charterers by such failure/ non-compliance, hire
not to be reduced.

Clause 63.    Letter of Indemnity
Charterers will make every endeavour to ensure that original Bill(s) of Lading are available at
discharge port on or before vessel's arrival to discharge port. However, if original Bill(s) of
Lading are not available then Owners agree to discharge entire cargo without delay against
presentation of Letter of Indemnity signed by Charterers only in Owners' P and I Club
standard wording.

13



ADDITIONAL CLAUSES TO M.V. "ZHE HAI 5(?)
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 63.    Continued.

Original Bill(s) of Lading to be forwarded to Owners as soon as it/they become available.

Clause 64.    Blacklist

Owners warrant vessel has not traded Russian Pacific ports for the past two years and vessel is not black listed by Canadian / USA / Australian / South African port authorities.

Owners warrant vessel has not traded to Israel, Cuba, North Korea and vessel is not black listed by South African port authority or government.

Owners guarantee that vessel is not black listed by any of vessel's calling ports and countries under this charter.

Clause 65.    Punctual Payment

Referring to lines 129 and 130, where there is any failure to make "punctual and regular payment", Charterers shall be given by Owners 3 (three) banking working days notice to rectify the failure; where so rectified the payment shall be deemed as punctual and regular.

Clause 66.    Agency

Owners may appoint Charterers' agents to attend to minimal husbanding matters, such as handling mail, shore pass, taxi rides and minor stores requirements without agency fee. Owners will handle their items either through Owners' agents or Charterers' agents. If Charterers' agents are used by Owners, Charterers will settle Owners' accounts with Charterers' agents for Owners with Owners' written confirmation, Charterers will deduct such account from next hire payment to Owners.

Clause 67.    Arbitration

This contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators' Association (LMAA) terms current at the time when the arbitration proceedings are commenced.

14



ADDITIONAL CLAUSES TO M.V. "ZHE HAI
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 67.     Continued.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration
shall appoint its arbitrator and send notice of such appointment in writing to the other party
requiring the other party to appoint its own arbitrator within 14 calendar days of that notice
and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its
own arbitrator and give notice that it has done so within the 14 days specified. If the other
party does not appoint its own arbitrator and give notice that it has done so within the 14 days
specified, the party referring a dispute to arbitration may, without the requirement of any
further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise
the other party accordingly. The award of a sole arbitrator shall be binding on both parties as
if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide
for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such
other sum as the parties may agree) the arbitration shall be conducted in accordance with the
LMAA Small Claims Procedure current at the time when the arbitration proceedings are
commenced.

Clause 68.     War Cancellation

Both Charterers and Owners have option to cancel balance Charter Party if war breaks out
between any two or more of the following countries :
United Kingdom, U.S.A., U.S.S.R., People's Republic of China, France, Canada, Japan, and
Germany.

Clause 69.     Titles

The titles in Clauses and Sub-Clauses of this Charter shall not in any way affect the
interpretation thereof.

Clause 70.     Respondance

If there is any notice advice from the Owner and should be decided, the decision must be
declared by the Charterers within 24 running hours after receipt of the Owners' notice. If the

15



ADDITIONAL CLAUSES TO M.V. "THE BAL
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 70.    Continued.
Charterers do not reply within the limited hours, it shall be deemed to accept the Owners
decision without any different opinion.

Clause 71.    Bottom Fouling
If the vessel's speed capacity is reduced as a result of the bottom growing fouled by reason of
the vessel being in port for a period in excess of 20 (twenty) days, unless such stay is caused
by vessel/Owners, the Owners are not to be responsible for reduction in speed of the vessel up
until such time as her next scheduled dry-dock or bottom cleaning arranged by Charterers.

Clause 72.    Dry-docking
Deleted.

Clause 73.    Hire Payment
Hire rate to be US$19,000 per day pro rata including overtime. The first 15 days hire plus
value of bunkers on delivery to be paid within 3 banking days after vessel's delivery and
receiving invoice by fax or telex and thereafter payable every 15 days in advance.

Owners' bank account details : see Clause 5.

Charterers are entitled to deduct from the last sufficient hire payment(s) bunkers on redelivery
and Owners' disbursements account.  In lieu of hold cleaning on redelivery US$3,500.00
lumpsum.

Clause 74.
Charterers to ensure the vessel to be left in seaworthy trim for shifting between berths and/or
ports to Master's satisfaction.

Clause 75.    Cargo Exclusions
All dangerous, inflammable, injurious, hazardous and corrosive cargoes, explosives of any
kind including blasting caps and detonators, black powder, arms, ammunition and war
materials of any kind and/or their wastes, acids, petroleum or its products, naphtha,
turpentine, motor spirits, asphalt, pitch, tar, ammonium sulphate, harmful and corrosive
fertilisers, petcoke, calcium carbide, calcium hydrochloride, ammonium nitrate/ammonium



ADDITIONAL CLAUSES TO M.V. "ZHE HAI ..."
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 75.     Continued.

sulphate (except for fertiliser grade which allowed), cement, salt, borax in bulk, charcoal, scrap, creosoted goods, livestock, copra, hides, quick lime, sunflower seed expellers, sludge ore, motor blocks and turning, nuclear and radio active materials/products/wastes, isotope, direct reduced iron ore, hot briquetted iron, caustic soda, zinc ashes, ferro silicon, concentrate, bone meal, mobile homes, rosin, harmful and combustible seed cakes and oil cakes, wet hides, clean nitrate, DRIP, log, pond coal, fish meal, bones, metal borings and cuttings, waste paper, sea/river sands.

Clause 76.     Trading Exclusions

Iraq, Libya, Ethiopia, Somalia, CIS/Russian Pacific ports, Zaire, Liberia, Georgia, Yemen, Haiti, Cuba, Cambodia, Israel, Syria, Lebanon, Alaska, St. Lawrence above Montreal, Namibia, Gulf of Sirte, Albania, Abkhazia, Sri Lanka, Sierra Leone, Eritrea and Taiwan, all war and war like zones which to be determined by Lloyd's London and any other places which vessel is from time to time prohibited to call by the national authority under the vessel is registered.

Clause 77.     NAABSA Clause

NABBSA Clause to be applied at Buenaventura, Guayaquil, Brazilian and Argentinian ports and Nigeria.  Only always afloat except at such places where is customary for similar size vessels to safely lie aground after obtaining Owners' approval :

1.     Charterers guarantee that such place where is customary for m/v "ZHE HAI 128" to safely lie aground at berth during loading and/or discharging operation.

2.     The BAABSA (not always afloat but safely aground) clause to be applied only while vessel is at berth for loading or discharging cargo and is not applicable to the operation of berthing / un-berthing and/or navigation of entering/leaving port.

3.     Charterers are fully responsible for any cost/expense caused/incurred directly and/or indirectly by damage to the bottom of ship due to such operation (lie aground).

Clause 78.     CONWARTIME 1993

BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERS, 1993

Code Name: "CONWARTIME 1993"

(1)   For the purpose of this Clause, the words:



ADDITIONAL CLAUSES TO M.V. "ZHE HAI
CHARTER PARTY DATED 19th JANUARY, 2007

Clause 78.    Continued.

(a)    "Owners" shall include the shipowners, bareboat Charterers, Disponent Owners, managers or other operators who are charged with the management of the vessel, and the Master; and

(b)    "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

(2)    The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3)    The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

(4)

(a)    The Owners may effect war risks insurance in respect of the Hull and Machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls there for shall be for their account.

(b)    If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

(5)    If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner



ADDITIONAL CLAUSES TO M.V. "ZEE HAI"
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 78.    Continued.

defined by the said terms, then such bonus or additional wages shall be reimbursed to the

Owners by the Charterers at the same time as the next payment of hire is due.

   (6)   The vessel shall have liberty:-

   (a)   to comply with all orders, directions, recommendations or advice as to departure,
arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of
cargo, delivery, or in any other way whatsoever, which are given by the Government
of the Nation under whose flag the vessel sails, or other Government to whose laws
the Owners are subject, or any other Government, body or group whatsoever acting
with the power to compel compliance with their orders or directions;

   (b)   to comply with the orders, directions or recommendations of any war risks
underwriters who have the authority to give the same under the terms of the war
risks insurance;

   (c)   to comply with the terms of any resolution of the Security Council of the United
Nations, any directives of the European Community, the effective orders of any
other Supranational body which has the right to issue and give the same, and with
national laws aimed at enforcing the same to which the Owners are subject, and to
obey the orders and directions of those who are charged with their enforcement;

   (d)   to divert and discharge at any other port any cargo or part thereof which may render
the vessel liable to confiscation as a contraband carrier;

   (e)   to divert and call at any other port to change the crew or any part thereof or other
persons on board the vessel when there is reason to believe that they may be subject
to internment, imprisonment or other sanctions;

   (7)   If in accordance with their rights under the foregoing provisions of this Clause, the
Owners shall refuse to proceed to the loading or discharging ports, or any one or more of
them, they shall immediately inform the Charterers. No cargo shall be discharged at any
alternative port without first giving the Charterers notice of the Owners' intention to do so and
requesting them to nominate a safe port for such discharge. Failing such nomination by the
Charterers within 48 hours of the receipt of such notice and request, the Owners may
discharge the cargo at any safe port of their own choice.

   (8)   If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause
anything is done or not done, such shall not be deemed a deviation, but shall be considered as
due fulfilment of this Charter Party.



ADDITIONAL CLAUSES TO M.V. "ZHE HAI ___
CHARTER PARTY DATED 19th JANUARY, 2007

Clause 79.    Both To Blame Collision Clause

If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply.

Clause 80.    New Both To Blame Collision Clause

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owner to the Owners of the said goods and set off, recouped, or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

And the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

Clause 81.    U.S.A. Clause Paramount

This Bill of Lading shall have effect subject to the provisions of Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (except as may be otherwise specifically provided herein) govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier. The carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery or loss of or damage to the goods occurring while the goods are not in the actual custody of the carrier.



AUDITIONAL CLAUSES TO M.V. "ZHE HAI SHENG"
CHARTER PARTY DATED 16th JANUARY, 2002.

Clause 82.        General Average and The New Jason Clause
General Average shall be payable according to the York/Antwerp Rules, 1974 as amended
1990, but where the adjustment is made in accordance with the law and practice of the United
States of America, the following clause shall apply : –

New Jason Clause
In the event of accident, danger, damage or disaster before or after the commencement of the
voyage, resulting from any cause whatsoever, whether due to negligence or not for which, or
for the consequence of which, the carrier is not responsible by statute, contract or otherwise,
the goods, shipper, consignees or Owners of the goods shall contribute with the carrier in
general average to the payment of any sacrifices, losses or expenses of a general average
nature that may be made or incurred and shall pay salvage and special charges incurred in
respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be
paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the
carrier or his agents may deem sufficient to cover the estimated contribution of the goods and
any salvage and special charges there shall, if required, be made by the goods, shippers,
consignees or Owners of the goods to the carrier before delivery.

And Charterers shall procure that all Bills of Lading issued under this Charter Party shall
contain the same clause.

Clause 83.
Deleted.

Clause 84.        Bimco Standard Double Banking Clause
(a)        The Charterers shall have the right, where and when it is customary and safe for
vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside
another vessel or vessels of any size or description whatsoever or to order such vessels to
come and remain alongside at such safe dock, wharf, anchorage or other place for
transshipment, loading or discharging of cargo and/or bunkering.

(b)        The Charterers shall pay for and provide such assistance and equipment as may be
required to enable any of the operations mentioned in this clause safely to be completed and

2:



ADDITIONAL CLAUSES TO M.V. "THE HA[...]
CHARTER PARTY DATED 19th JANUARY, 2007

Clause 84.    Continued.

shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c)    Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d)    The Owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's Underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

(e)    The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

Clause 85.    CANCELLING CLAUSE 2002 (CODE NAME: CANCELCON 2002)
Deleted.

Clause 86.    Sulphur Protective Clause

Charterers have the liberty to carry two voy. sulphur (whether it be full or part cargo) during the entire currency of this Charter Party if exercised, on following conditions:

a.    Charterers undertake to use holds as little as possible, provide vessel's stability trim and stress permitting.

b.    Before loading, all holds assigned for sulphur to be lime washed by Charterers at their time/expense/risk to the satisfaction of Master and independent surveyors appointed by Charterers at their time/expense.

c.    Cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO and/or any other latest regulation/rules applicable to such cargo.

d.    All fresh water used for irrigation onto sulphur during loading/voyage/discharging to be for Charterers' account.

e.    After discharging Charterers undertake thorough cleaning of holds including removal of lime wash coating and to supply sufficient fresh water at their expense for washing down of all holds to the satisfaction of the Master.



ADDITIONAL CLAUSES TO M.V. "ZHE HAI"
CHARTER PARTY DATED 19thJANUARY, 2007.

Clause 86.   Continued.

f.   Such cargo not to be the last cargo prior to redelivery.

g.   Any extra expense resulting there from/incurred thereby (such as holds cleaning to
Master's satisfactions/holds survey etc.) and detention through any of above cause to be for
Charterers' account.

h.   Charterers are allowed to use ship's crew to perform lime-washing and removal of
same and repainting as necessary against paying US$600.00 per hold besides normal
intermediate holds cleaning, but always subject to prior consent of Owners/Master/crew and
local regulations permitting.  And all time used to be for Charterers' account. Owners/Master
are not held responsible for passing hold cleanliness for loading next cargo and for any
consequences, whatsoever caused due to such arrangement.

Clause 87.   Cosco Concentrate Loading Clause

Vessel is to load concentrates at Alaska, British Columbia, United States West Coast,
Australia, Chile , Argentina only. For loading concentrates the stowage to be within vessel's
strength. All necessary separations if required to be properly accepted up to surveyors' and
Master's satisfaction at Charterers' expense and time and cargo to be loaded, stowed,
separated, trimmed and discharged etc., according to latest IMO and local authorities
regulations. At Master's request, Charterers are allowed to appoint P and I surveyor or
independent surveyor to supervise loading, atowing execution of separation etc. to surveyor's
agreement and Master's satisfaction at Charterers' time and expenses.

Charterers to supply vessel shippers' certificates of transportable moisture limit and cargo
moisture content evidencing cargo compliance with latest IMO regulation. After loading,
cargo must be properly trimmed at Charterers' time and expense to surveyors' satisfaction.

It is understood that loading terms for loading concentrated to be weather working days.
During loading, Master has the right to stop loading and close the hatches if rain effects
concentrates moisture contents. Any such stoppage is not considered to be off hire under this
Charter Party. Charterers to pay crew special bonus US$200.00 per holds after/during
completion of discharge.



ADDITIONAL CLAUSES TO M.V. "THE HA..."
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 88.     Cement Protective Clause

Notwithstanding the cargo exclusions as above, Charterers have liberty to carry 2 (two) cargoes of bulk cement, (whether it be full or part cargo), during the entire currency of this charter on following conditions:

1.     Should any additional/special washing down of holds before loading be required/ recommended by independent surveyors appointed by Charterers at their expense/time, such wash down to be arranged by Charterers at their expense/time;

2.     After loading, Charterers undertake to arrange at their expense any special/extra trimming and/or levelling of cargo to Master's satisfaction and also Charterers to give reasonable time to allow for the cargo to settle and any air to escape before vessel's departure from loading berth/port;

3.     After discharge Charterers to supply sufficient fresh water at their expense for washing down of all holds.

4.     Such cargo not to be the last cargo prior to redelivery;

5.     Any extra expenses resulting therefrom/incurred thereby and any detention through any of above causes to be for Charterers' account;

6.     Charterers are allowed to use ship's crew to perform hold cleaning against paying US$500.00 per hold besides normal intermediate hold cleaning, but always subject to prior consent of Master/crew and local regulations permitting. All time used to be for Charterers' account. Owners/Master shall (are) not hold responsible for passing hold inspection for loading next cargo and for any consequences whatsoever cause due to such arrangement.

7.     Charterers to be allowed to cut cement holes in order to perform loading with closed hatch covers. Cement holds to be cut and re-welded by shore-side workshop welder at Charterers' expenses and time with following applied:

(1)     All cutting and restoring of the holes to be fully supervised/attended/approved by classification surveyor with written documents.

24



ADDITIONAL CLAUSES TO M.V. "ZHE HAI 59"
CHARTER PARTY DATED 19thJANUARY, 2007.

Clause 88.    Continued.

(2)    Holes not to be cut within the same frame space with the existing grain feeding holes and to be cut at the suitable place of hatch cover in accordance with vessel's builder specification.

(3)    When restoring cement holes, of ill plates or similar material if deemed necessary by Master/surveyor to be fitted, for complete welding in order to reinstate the hatch covers back to their original condition.

(4)    After completion of restoration, hose test to be carried out in presence of classification surveyor and the test result should be to his satisfaction. Otherwise the Charterers have the obligation to rectify the situation until classification surveyor is satisfied.

(5)    All time for preparing, cutting and restoring up to classification surveyor's satisfaction as well as all expenses including classification surveyor's fees and expenses shall be for Charterers' account.

Clause 89.    Salt Protective Clause
Charterers are permitted to carry salt (whether it be full or part cargo) and can not be a consecutive voyage after carrying sulphur) during the entire period of this Charter, if exercised, on following conditions:

1.    Charterers undertake to use holds as little as possible, provided vessel's stability trim and stress permitting.

2.    Before loading, all holds assigned for salt to be lime washed by Charterers at their time/expense/risk to the satisfaction of Master and independent surveyors appointed by Charterers at their time/expense.

3.    Cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO and/or any other latest regulations/rules applicable to such cargo.

4.    All fresh water used for irrigation no to salt during loading/voyage/discharging to be for Charterers' account.

5.    After discharge Charterers undertake thorough cleaning of holds including removal of lime wash coating and to supply sufficient fresh water at their expense for washing down of all holds to the satisfaction of the Master.

25



ADDITIONAL CLAUSES TO M.V. "ZHE HAI
CHARTER PARTY DATED 19th JANUARY 2007.

Clause 89.    Continued.

6.    Such cargo not to be the last cargo prior to redelivery.

7.    Any extra expense resulting therefrom/incurred thereby (such as holds cleaning to Masters' satisfactions/holds survey etc.) and any detention through any of above causes to be for Charterers' account.

8.    Charterers are allowed to use ship's crew to perform lime washing and removal of same and repainting as necessary against paying US$600.00 per hold besides normal intermediate holds cleaning, but always subject to prior consent of Owners/Master/crew and local regulations permitting, and all time used to be for Charterers' account. Owners/Master are not held responsible for passing hold cleanliness for loading next cargo and for any consequences, whatsoever caused due to such arrangement.

Clause 90.

Cargo gear to be in a fully efficient state as designed during the currency of the Time Charter.

In the event of breakdown of cargo gears by reason of disablement or insufficient power or otherwise, the hire to be reduced pro-rata for the actual period of such insufficiency in proportion to actual working number of cargo gears.

If Charterers elect to continue work on hatch or hatches affected by breakdown by hiring shore appliances, Owners are to pay for the shore appliances which to be at reasonable price and prior approved by the Owners, but in such case Charterers are to pay full hire for all time shore appliances are working. Any stevedoring and/or labour charges additionally accruing due to breakdown of vessel's equipment including costs of standby stevedore labour to be for Owners' account.

Clause 91.

Owners guarantee vessel's hatch covers are to be water tight throughout this charter period and if the hatch covers found defective, same to be rectified at Owners' time and expenses to Charterers' satisfaction. Charterers also have the right to carry out hose test on all hatches on delivery.

25



ADDITIONAL CLAUSES TO M.V. "THE HAI ..."
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 92.
Owners guarantee that vessel's holds are clear of any fittings/super-structures such as car deck, curtain plates whatsoever.

Clause 93.
Vessel is fully fitted with ITF/WWF/APL on delivery and under this charter.

Clause 94.
Owners guarantee vessel is suitable for grab discharging.

Clause 95.
The COFR expired end of 2005, as the vessel did not call at U.S. since then. If Charterers need, Owners can renew it and it should be 40 days in advance.

Clause 96.
Charterers' option to load intended cargo on deck/hatch covers at Charterers' time/expenses in accordance with vessel's deck/hatch cover strength and vessel's stability at Master's discretion.

Clause 97.
Charterers' option to weld padeyes on deck/hold at Charterers' time/expenses and same to be removed prior to redelivery but Charterers' option to redeliver vessel without removal paying US$4.00 per padeye.

Clause 98.
Bimco Y2K Clause to be incorporated in the Charter Party.

Clause 99.
Bimco ISPS Clause to be incorporated in the Charter Party.

Clause 100.
Owners guarantee vessel is fully grain fitted/cleaned/self trimming.



ADDITIONAL CLAUSES TO M.V "THE HAI R...
CHARTER PARTY DATED 19th JANUARY, 2007.

Clause 101.

All negotiations and eventual fixture if any to be kept top private and confidential and not to be disclosed to others.

Clause 102.    Bimco Fuel Sulphur Content Clause

Notwithstanding anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the vessel, at all times, to meet the maximum sulphur content requirements of any emission control zone when the vessel is trading within that zone. The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this Clause. For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

THE OWNERS                    THE CHARTERERS

# EXHIBIT 2



# J.H. SHIPPING CO., LTD

## STATEMENT OF ACCOUNT

REF NO:  BIZIII-070202-01

DATE  :  2007-03-02

TO: AL TUWAIRQI GROUP

| ITEM | DESCRIPTION | | |
|---|---|---|---|
| MV | PRE-FINAL HIRE S.O.A OF MV. SHEHAI 126 | ILOHC | 3500 |
| DELIVERY | DOMINGHAM ON 0315UTC 2ND FEB., 2007 | INT H/C | |
| B.O.D | IFO : 591 MT   MDO : 77.6 MT | C.V.E/MONTH | 1250 |
| REDELIVERY | | | |
| B.O.R | IFO :    MT    MDO :     MT | | |

TOTAL DURATION       22.44791667 DAYS

NET DURATION         22.447917 DAYS

OFF-HIRE             0.000000 DAYS

| ITEM | DESCRIPTION | | | | | Dr | Cr |
|---|---|---|---|---|---|---|---|
| HIRE | USD | 19,000 | X | | 22.447917 | $429,510.42 | |
| | | 2007-02-02 3:15 UTC | | | | | |
| | | 2007-02-24 14:00 UTC | | | | | |
| LESS ADD COMM | 1.25% | | | | | | $5,331.38 |
| B.O.D | | IFO | 591.8 | X | USD 310 | $183,099.02 | |
| | | MDO | 77.56 | X | USD 610 | $47,310.89 | |
| B.O.R | | IFO | 376 | X | USD 310 | | $116,572.40 |
| | | MDO | 49.32 | X | USD 610 | | $30,085.20 |
| ILOHC | | | | | | $3,500.00 | |
| C/V/E | | 1,250 PMPR | | | | $935.33 | |
| EXTRA P/C | | | | | | | $14,738.78 |
| MASTER SHOPPING | | | | | | | $1,313.54 |
| TAXES | | | | | | | $418.28 |
| STOPPAGE | L/P | | | | | | $9,249.31 |
| | D/P | | | | | | $346.35 |
| SURVEY | ON | | | | | | $495.80 |
| | OFF | | | | | | $800.00 |
| PAYMENT | | 2ND FEB., 2007 | | | | | $330,062.50 |
| | | 21ND FEB., 2007 | | | | | $7,666.41 |

| | | |
|---|---|---|
| SUB TOTAL | $661,355.76 | $577,080.05 |
| BALANCE DUE TO OWNER | $0.00 | $664,275.71 |
| GRAND TOTAL | $661,355.76 | $661,355.76 |

OUR BANK ACCOUNT:
KOREA   EXCHANGE  BANK INSADONG BRANCH.SEOUL,KOREA
BENEFICIARY : JH SHIPPING CO.,LTD.
SWIFT CODE : KOEXKRSE
ACCOUNT NO. 650-004633-387

*J.H. SHIPPING CO., LTD.*